**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**JEFFREY'S AUTO BODY, INC.,**

            **Plaintiff,**

  vs.                                    **5:12-cv-635
                                          (MAD/DEP)**

**STATE FARM GENERAL INSURANCE
COMPANY,**

            **Defendant.**
_____

**APPEARANCES:**                                    **OF COUNSEL:**

**BOUSQUET HOLSTEIN PLLC**               **CECELIA R. CANNON, ESQ.**
100 West Fayette Street, Suite 900         **LAWRENCE M. ORDWAY, JR., ESQ.**
Syracuse, New York 13202
Attorneys for Plaintiff

**RIVKIN RADLER LLP**                        **DOUGLAS G. TISCHLER, ESQ.**
926 RexCorp Plaza                                **EVAN H. KRINICK, ESQ.**
Uniondale, New York 11556-0926          **MICHAEL P. VERSICHELLI, ESQ.**
Attorneys for Defendant

**HANCOCK ESTABROOK, LLP**            **ALAN J. PIERCE, ESQ.**
1500 AXA Tower I
100 Madison Street
Syracuse, New York 13202
Attorneys for Defendant


**Mae A. D'Agostino, U.S. District Judge:**


## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

    On March 7, 2012, Plaintiff commenced this suit by filing a complaint in New York State

Supreme Court, in Onondaga County. *See* Dkt. No. 1. In the complaint, Plaintiff asserts claims

of breach of contract, *quantum meruit*, and violations of New York General Business Law § 349. *See id.* On April 13, 2012, Defendant removed the action to this Court based upon diversity of citizenship. *See id.*

Currently before the Court is Defendant's motion to dismiss, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1]

## II. BACKGROUND

Plaintiff, a corporation with its principal place of business in New York, is an automobile repair shop located in North Syracuse, New York. *See* Dkt. No. 1-1 at ¶¶ 1, 10, 18. Defendant is an insurance company organized under the laws of the state of Illinois, with its principal place of business in Bloomington, Illinois. *See id.* at ¶ 2.

On a number of occasions between 2007 and 2011, Plaintiff repaired vehicles for customers whose repairs were to be paid by Defendant. *See id.* at ¶¶ 7-9. According to Plaintiff, these customers fall into two categories, the "First Party Assignors" and the "Third Party Assignors" (collectively, the "Assignors"). Although the theories of recovery differ for these two types of assignors, Plaintiff alleges that Defendant was obligated to repair the vehicles of all of the Assignors to their pre-accident condition.

As to the First Party Assignors, Defendant was the insurer of the vehicles being repaired. *See id.* at ¶ 7. In the complaint, Plaintiff identifies eighteen (18) of these First Party Assignors,

---

[1] The Court notes that there are currently four other cases pending which share an identity of issues to the present matter. *See Jeffrey's Auto Body, Inc. v. State Farm Gen. Ins. Co.*, No. 5:12-cv-635 (MAD/DEP); *Nick's Garage, Inc. v. Progressive Casualty Ins. Co.*, No. 5:12-cv-777 (MAD/DEP); *Jeffrey's Auto Body, Inc. v. Progressive Casualty Ins. Co.*, No. 5:12-cv-776 (MAD/DEP); and *Nick's Garage, Inc. v. Nationwide Mutual Ins. Co.*, No. 5:12-cv-868 (MAD/DEP).

2

who were specifically identified by their unique claim number, policy number, and vehicle identification number. *See id.* at ¶¶ 4, 6, 7. According to Plaintiff, these First Party Assignors were in privity with Defendant and Defendant was required by the listed insurance policies "to provide enough coverage to restore the Vehicles to the same condition they were in immediately prior to the Accidents." *See id.* at ¶¶ 9, 22. Plaintiff claims that the First Party Assignors assigned their rights under the specified policies to Plaintiff, and that Defendant breached the policies by providing an insufficient estimate to return the vehicles to their pre-accident condition. *See id.* at ¶¶ 9, 14.

As to the second category of customers – *i.e.*, the Third Party Assignors – Plaintiff repaired vehicles which were not directly insured by Defendant. *See id.* at ¶ 8. Rather, these vehicles were damaged by drivers who were insured by Defendant. *See id.* at ¶ 4(cv)-(cxxxv). Accordingly, Plaintiff alleges that Defendant's contractual relationship was with its tort-feasor insured, not with the Third Party Assignors, and that Defendant accepted liability on behalf of its insured for the repairs to the Third Party Assignors' vehicles by making partial payment for the claimed repairs. *See id.* at ¶ 8. Plaintiff claims that this assignment by the Third Party Assignors covered the Third Party Assignors' right to bring claims under New York State General Business Law § 349 and *quantum meruit*.

Specifically, Plaintiff contends that all of the Assignors brought their vehicles to Plaintiff for repairs after being damaged during accidents. *See id.* at ¶¶ 6, 10. Each of the Assignors made Plaintiff his or her "designated representative" pursuant to New York regulation. *See id.* at ¶ 11. A designated representative is authorized to negotiate with an insurer on behalf of a customer for repairs to a vehicle. *See* 11 N.Y.C.R.R. § 216.7(a)(2). In connection with each vehicle, Plaintiff sent Defendant an estimate of the repairs necessary to return the vehicles to their pre-accident

condition. *See* Dkt. No. 1-1 at ¶ 12. Plaintiff alleges that Defendant then submitted estimates to Plaintiff which were insufficient to restore the vehicles to their pre-accident condition. *See id.* at ¶¶ 13-14. Thereafter, Plaintiff contends that it served upon Defendant Notices of Deficiencies informing Defendant "that there were open items and that an agreed upon amount had not been reached for the repairs[.]" *See id.* at ¶ 15. Plaintiff alleges that, although it still completed the repairs necessary to return the vehicles to their pre-accident condition, Defendant failed to fully pay for those repairs, thereby violating its contractual and regulatory obligations to put the vehicles in their pre-accident condition. *See id.* at ¶¶ 18-19, 22, 27.

The complaint contains three causes of action. Plaintiff's first cause of action seeks $29,271.71 from Defendant for allegedly breaching the First Party Assignors' insurance policies and for violating New York State Insurance Law and regulations. *See id.* at ¶¶ 21-23. Plaintiff's second cause of action sounds in *quantum meruit* and seeks $44,133.86 based on Defendant's alleged acceptance of the benefit of Plaintiff's services in fulfillment of Defendant's obligation to return the vehicles to their pre-accident condition without adequately compensating Plaintiff. *See id.* at ¶¶ 24-28. Plaintiff's third cause of action seeks $24,000 ($1,000 per violation) and reasonable attorneys' fees for Defendant's alleged deceptive business practices in violation of New York State General Business Law ("GBL") § 349. *See id.* at ¶¶ 29-36. In this claim, Plaintiff alleges that Defendant's "failure to negotiate all elements of the claim" and pay the amount necessary to restore the vehicles to their pre-accident condition constitutes a deceptive business practice under GBL § 349. *See id.* at ¶¶ 32-34.

Currently before the Court is Defendant's motion to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Dkt. No. 16.

4

# III. DISCUSSION

## A. Standard of review

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and

5

plausibility of "entitlement to relief."'" *Id.* (quoting [*Twombly*, 550 U.S.] at 557, 127 S. Ct. 1955). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed[,]" *id.* at 570.

**B.     Relevant regulatory framework**

Part 216 of the New York State Insurance Department Regulations ("Regulation 64"), entitled "Unfair Claims Settlement Practices and Claim Cost Control Measures," governs an insurer's conduct in the automobile repair process, and provides rules for the processing of first party motor vehicle physical damage claims and third party property damage claims arising under motor vehicle liability insurance contracts. *See* 11 N.Y.C.R.R. § 216.0(a). Section 216.7 sets forth the "[s]tandards for prompt, fair and equitable settlement of motor vehicle physical damage claims." 11 N.Y.C.R.R. § 216.7.

When an individual's car is involved in an accident and the person makes an insurance claim, the person's insurer may inspect the car. *See id.* § 216.7(b)(1). When inspecting the car, the insurer must negotiate with the insured or the insured's "designated representative," which may include an automobile repair shop such as Plaintiff. *See id.* Negotiations must be conducted in "good faith," *id.* § 216.7(b)(7), and the insurer must make "a good faith offer of settlement, sufficient to repair the vehicle to its condition immediately prior to the loss." *Id.* § 216.7(b)(1). After negotiations, if the parties cannot reach an "agreed price," which is defined as "the amount agreed to by the insurer and the insured, or their representatives, as the reasonable cost to repair damages to the motor vehicle resulting from the loss, without considering any deductible or other deductions," *id.* § 216.7(a)(1), the insurer must furnish the insured with a prescribed notice of

6

rights letter. This notice of rights letter indicates the insurer's offer, and provides that, upon the insured's request, the insurer can recommend a repair shop that will make the repairs at a cost equal to the insurer's estimate. *See id.* § 216.7(b)(14)(i); 11 N.Y.C.R.R. § 216.12. The notice of rights letter further states that, if such request has not already been made, the insured must sign an attached disclosure statement in order to enable the insurer to recommend a repair shop. *See id.* § 216.12. Further, the disclosure statement advises the insured that, pursuant to New York State Insurance Law § 2610, the insurer cannot require that the repairs be made at a particular shop.

On July 16, 2008, the Superintendent of Insurance issued an opinion letter construing what constitutes "good faith negotiation" under Regulation 64. Specifically, the opinion letter provides that "a good faith negotiation need not result in an ultimate agreement on a settlement amount provided that a repair shop, reasonably convenient to the claimant, is able to repair the vehicle for the amount the insurer offers in settlement." Ops. Gen. Counsel N.Y.S. Ins. Dept. No. 08-07-09 (July 16, 2008), *available at* http://www.dfs.ny.gov/insurance/ogco2008/rg08070 9.htm. This July 16, 2008 opinion letter also refers to an April 16, 2002 opinion letter which indicates that, "if an insurer makes a good faith offer to the insured to pay for the cost of repair and identifies a facility that will repair the damage at the cost estimated by the insurer, the insurer is not obligated to pay for any repair cost that exceeds the amount of the good faith offer required pursuant to 11 NYCRR § 216.7(b)(1)." *Id.* (citation omitted). Moreover, the letter opines that, "[i]n such a circumstance, if the insured elects to repair the vehicle at another facility at a higher repair cost, the insurer is not financially responsible for the excess cost above the amount of the insurer's offer." *Id.* (citation omitted). A December 31, 2008 opinion letter further states that "there is no requirement that either side move off its respective initial position in a negotiation, and an insurer is not required to alter its initial negotiating position on labor rates, or any other

7

negotiable issue, provided that its position is taken in good faith." Ops. Gen. Counsel N.Y.S. Ins. Dept. No. 08-12-09 (Dec. 31, 2008), *available at* http://www.dfs.ny.gov/insurance/ogco2008/rg081209.htm.

**C.    Breach of contract[2]**

Defendant contends that Plaintiff has failed to allege a plausible breach of contract claim. *See* Dkt. No. 16-3 at 15-16. Specifically, Defendant asserts that Plaintiff admits that it has no contract with Defendant and that this claim is based on assignments from Defendant's policy holders. *See id.* at 16. Defendant contends, however, that Plaintiff has failed to allege how or what provisions of the contract were breached and simply parrots the language of the insurance regulations by stating that Defendant was obligated to provide enough coverage to restore the Vehicles to the same condition they were in immediately prior to the accidents. *See id.* (citation omitted).

Under New York law, a plaintiff alleging a breach of contract claim must establish the following elements: (i) the existence of a contract; (ii) adequate performance of the contract by the plaintiff; (iii) breach by the other party; and (iv) damages suffered as a result of the breach. *See Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996) (citation omitted); *see also Wolff v. Rare Medium, Inc.*, 171 F. Supp. 2d 354, 357-58 (S.D.N.Y. 2001) (citation omitted). "When the terms of a written contract are clear and unambiguous, the intent of the parties must be found within the four corners of the contract, giving practical interpretation to the language employed

---

[2] In its memorandum of law in opposition to Defendant's motion, Plaintiff clarifies that it is not asserting a breach of contract claim as to the Third Party Assignors, but only the First Party Assignors. *See* Dkt. No. 17-1 at 11 n.1.

8

and the parties' reasonable expectations." *131 Heartland Blvd. Corp. v. C.J. Jon Corp.*, 82 A.D.3d 1188, 1189 (2d Dep't 2011) (citations omitted).

"In order to adequately allege the existence of an agreement, 'a plaintiff must "plead the provisions of the contract upon which the claim is based."'" *Howell v. American Airlines, Inc.*, No. 05-CV-3628, 2006 WL 3681144, *3 (E.D.N.Y. Dec. 11, 2006) (quoting *Phoenix Four, Inc. v. Strategic Res. Corp.*, No. 05 Civ. 4837(HB), 2006 WL 399396, at *10 (S.D.N.Y. Feb. 21, 2006) (quoting *Window Headquarters, Inc. v. MAI Basic Four, Inc.*, Nos. 91 Civ. 1816(MBM), 92 Civ. 5283(MBM), 1993 WL 312899, at *3 (S.D.N.Y. Aug. 12, 1993) (quoting *Griffin Bros., Inc. v. Yatto*, 68 A.D.2d 1009, 1009, 415 N.Y.S.2d 114, 114 (App. Div. 3d Dep't 1979)))). "A plaintiff need not attach a copy of the contract to the complaint or quote the contractual provisions verbatim." *Id.* (citing *Window Headquarters*, 1993 WL 312899, at *3 (citing *Mayes v. Local 106, Int'l Union of Operating Eng'rs*, 739 F. Supp. 744, 748 (N.D.N.Y. 1990))). "However, the complaint must at least 'set forth the terms of the agreement upon which liability is predicated . . . by express reference.'" *Id.* (quoting *Phoenix Four*, 2006 WL 399396, at *10; *Chrysler Capital Corp. v. Hilltop Egg Farms, Inc.*, 129 A.D.2d 927, 928, 514 N.Y.S.2d 1002, 1003 (App. Div. 3d Dep't 1987)).

In the present matter, Plaintiff has adequately plead all of the elements of its breach of contract claim. The complaint specifically identifies each insurance policy at issue and the individual First Party Assignor for each policy. *See* Dkt. No. 1-1 at ¶¶ 4, 6, 20. As the assignee, Plaintiff stands in the shoes of the First Party Assignor and has the same rights as the insured under the policies. *See Citibank N.A. v. Tele/Resources, Inc.*, 724 F.2d 266, 269 (2d Cir. 1983) (citation omitted). Further, the complaint specifically states that Defendant was required by the policies to provide coverage for repairing each vehicle to is pre-accident condition, yet failed to

do so.  *See* Dkt. No. 1-1 at ¶¶ 9, 14, 18, 22; *see also Trizzano v. Allstate Ins. Co.*, 7 A.D.3d 783, 785 (2d Dep't 2004) (holding that "[a]pplicable provisions of the Insurance Law are 'deemed to [be] part of [an] insurance contract as though written into it'") (quotation and other citations omitted).  Moreover, the complaint alleges damages in that it provides the monetary difference between Defendant's offer to settle the claim and the amount Plaintiff claims was necessary to restore the vehicle to its pre-accident condition.  *See id.* at ¶ 20.  Defendant was informed of this amount when Plaintiff sent it the Notices of Deficiencies for each claim.  *See id.* at ¶ 15.  Finally, the complaint alleges that the policies at issue were in effect at all relevant times and that Plaintiff completed the repairs to the vehicles to restore them to their pre-accident condition.  *See id.* at ¶¶ 5, 18.

Based on the foregoing, the Court finds that Plaintiff has adequately pleaded its breach of contract claim; and, therefore, denies Defendant's motion to dismiss as to this claim.

**D.**     *Quantum meruit*

Defendant contends that, "[b]ecause the relationship between Plaintiff's assignors and State Farm is defined by a written contract – particularly in the case of the first party assignments – Plaintiff is precluded from maintaining a claim for quantum meruit."  *See* Dkt. No. 16-3 at 17.  Alternatively, Defendant argues Plaintiff has not plausibly stated a claim for *quantum meruit*.  *See id.* at 18.  Defendant claims that the services allegedly provided by Plaintiff were provided to Plaintiff's customers, not to Defendant.  *See id.*  Further, Defendant asserts that there is no allegation that it actually accepted the services Plaintiff provided.  *See id.*  Defendant claims that the services "were accepted by Plaintiff's assignors (who are primarily responsible for the charges)."  *See id.*  Finally, Defendant contends that "Plaintiff acknowledges that State Farm

provided estimates *prior* to the commencement of repairs that were for amounts *less* than that stated in Plaintiff's estimate, thus indicating that State Farm did not accept Plaintiff's services at the amount stated." *See id.* (citation omitted).

"In order to recover in *quantum meruit* under New York law, a claimant must establish '(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services.'" *Mid–Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005) (quotation omitted). *Quantum meruit* is an "obligation imposed by equity to prevent injustice[.]" *ITD Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 142 (2009). A party may not recover under a *quantum meruit* theory if a valid and enforceable contract "governs the same subject matter as the *quantum meruit* claim." *Mid-Hudson Catskill Rural Migrant Ministry, Inc.*, 418 F.3d at 175 (citing *Clark–Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388, 521 N.Y.S.2d 653, 516 N.E.2d 190 (1987)) (other citations omitted).

As Defendant correctly contends, Plaintiff's *quantum meruit* claim must fail because the services Plaintiff provided were rendered at the behest of the vehicles owners and not Defendant. *See Pekler v. Health Ins. Plan of Greater N.Y.*, 67 A.D.3d 758, 760 (2d Dep't 2009) (citations omitted); *see also Prestige Caterers v. Kaufman*, 290 A.D.2d 295, 295-96 (1st Dep't 2002). "Under the theory of quantum meruit, if the services were performed at the behest of someone other than the defendant, the plaintiff must look to that party for recovery." *JLJ Recycling Contrs. Corp. v. Town of Babylon*, 302 A.D.2d 430, 431 (2d Dep't 2003) (citations omitted).

Moreover, the complaint makes clear that Plaintiff had no reasonable expectation of compensation from Defendant above what was offered while the parties were negotiating the

11

claims. *See Soumayah v. Minnelli*, 41 A.D.3d 390, 391-92 (1st Dep't 2007) (holding that the "plaintiff's allegations that he was informed that [defendant] could no longer afford to pay plaintiff his full salary, that his pay was going to be halved and that two other individuals were going to assume functions that he previously performed indicate that [defendant] did not accept additional services and that plaintiff had no reasonable expectation of compensation for those services"). Plaintiff's allegation to the contrary is undercut by its discussions with Defendant during which Defendant only offered amounts less than what Plaintiff claimed was necessary to repair each vehicle.

Based on the foregoing, the Court grants Defendant's motion to dismiss as to Plaintiff's *quantum meruit* claim.

**E.     General Business Law § 349**

Defendant asserts that Plaintiff has failed to plead the requirements for stating a cause of action pursuant to GBL § 349. *See* Dkt. No. 16-3 at 22-28. Specifically, Defendant contends as follows: "(1) Plaintiff does not allege harm to any consumer, much less the requisite 'widespread' public injury; to the contrary, the Complaint alleges only an ordinary business-to-business commercial dispute; (2) Plaintiff does not allege that State Farm committed any deceptive or misleading acts; and (3) even assuming, counterfactually, that the Complaint alleged some type of consumer harm, it is clear that any suit by Plaintiff would be a forbidden derivative action seeking to recover indirectly for injury to others." *See id.* at 23.

General Business Law § 349 declares unlawful all "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349(a). "'Section 349 governs consumer-oriented conduct and, on its face,

applies to virtually all economic activity.'" *North State Autobahn, Inc. v. Progressive Ins. Group Co.*, 102 A.D.3d 5, 953 N.Y.S.2d 96, 100 (2d Dep't 2012) (quoting *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 55, 698 N.Y.S.2d 615, 720 N.E.2d 892 (1999)) (other citations omitted).

To successfully assert a claim under General Business Law § 349(h), "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *City of New York v. Smokes–Spirits.Com, Inc.*, 12 N.Y.3d 616, 621 (2009); *see also Cohen v. JP Morgan Chase & Co.*, 489 F.3d 111, 126 (2d Cir. 2007) (citation omitted).

### *1. Consumer or widespread public injury*

Defendant contends that this claim should be dismissed because Plaintiff has failed to allege "any consumer harm, let alone the 'widespread' public injury required to state a claim under GBL § 349." *See* Dkt. No. 16-3 at 24. Further, Defendant asserts that, "because Plaintiff is a third-party business rather than a customer, its injuries are easily distinguished from consumer harm and do not implicate the public interest." *See id.* (citation and footnote omitted). Defendant claims that this case "involves a private contractual dispute between State Farm and an automobile repair shop over the rates charged by Plaintiff and the coverage afforded under State Farm's policy;" and, therefore, does not satisfy the consumer-oriented prong of section 349. *See id.* at 25.

"[P]arties claiming the benefit of [General Business Law § 349(h) ] must, at the threshold, charge conduct that is consumer oriented." *New York Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308, 320 (1995) (citation omitted); *see also Gaidon v. Guardian Life Ins. Co. of Am.*, 94 N.Y.2d 330, 334 (1999) (citation omitted); *Oswego Laborers' Local 214 Pension Fund v. Marine*

*Midland Bank*, 85 N.Y.2d 20, 25 (1995). "Private contract disputes, unique to the parties . . . [do] not fall within the ambit of the statute." *Oswego Laborers' Local 214 Pension Fund*, 85 N.Y.2d at 25 (citation omitted); *see also New York Univ.*, 87 N.Y.2d at 320. A "'single shot transaction,'" *Genesco Entertainment, Div. of Lymutt Indus., Inc. v. Koch*, 593 F. Supp. 743, 752 (S.D.N.Y. 1984), which is "tailored to meet the purchaser's wishes and requirements," does not, without more, constitute consumer-oriented conduct for the purposes of this statute. *See New York Univ.*, 87 N.Y.2d at 321; *see also Biancone v. Bossi*, 24 A.D.3d 582, 583 (2d Dep't 2005) (citations omitted).

"On the other hand, conduct has been held to be sufficiently consumer-oriented to satisfy the statute where it involved 'an extensive marketing scheme' . . . , where it involved the 'multi-media dissemination of information to the public' . . . , and where it constituted a standard or routine practice that was 'consumer-oriented in the sense that [it] potentially affect[ed] similarly situated consumers.'" *North State Autobahn, Inc. v. Progressive Ins. Group Co.*, 102 A.D.3d 5, 953 N.Y.S.2d 96, 101 (2d Dep't 2012) (internal and other quotations omitted). "Simply put, '[the] defendant's acts or practices must have a broad impact on consumers at large.'" *Id.* (quotation and other citations omitted).

The conduct alleged by Plaintiff in this case relates to a number of policyholders who either are or were Plaintiff's customers, and all of whom are subject to Defendant's standard form insurance policy. Therefore, this dispute is not "limited to a challenge regarding coverage made on the basis of facts unique to [a single insured], but relate to consumer-oriented conduct affecting the public at large." *Shebar v. Metro. Life Ins.*, 25 A.D.3d 858, 859 (3d Dep't 2006) (citations omitted). Where, as here, a defendant enters into "contractual relationship[s] with customers nationwide" *via* a form contract and has allegedly committed the challenged actions in

its dealings with multiple insureds, courts have held that such behavior affects the public generally and, therefore, satisfies the requirement of "consumer-oriented" conduct within the meaning of Section 349. *See, e.g., Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 51-53 (2d Cir. 1992) (holding that section 349 was applicable to insurers where the plaintiffs demonstrated that similar practices had been employed by the defendant against multiple insureds); *Joannou v. Blue Ridge Ins. Co.*, 289 A.D.2d 531, 531 (2d Dep't 2001) (holding that "[a]n insurance carrier's failure to pay benefits allegedly due its insured under the terms of a standard insurance policy can constitute a violation of General Business Law § 349") (citations omitted).

Based on the foregoing, the Court declines to dismiss Plaintiff's section 349 claim pursuant to the consumer-oriented prong of the statute.

### *2. Deceptive or misleading practice*

The New York Court of Appeals has held that, under section 349, "[w]hether a representation or an omission, the deceptive practice must be 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29 (2000) (quotation and other citations omitted). A deceptive practice, however, "need not reach the level of common-law fraud to be actionable under section 349," and reliance is not an element of a section 349 claim. *See id.* (citations omitted). "The plaintiff, however, must show that the defendant's 'material deceptive act' caused the injury." *Id.* (quotation omitted).

In its complaint, Plaintiff alleges that, "[w]ith respect to each of the Assignors and Accidents . . . , Defendant limited the costs it would cover to repair the Vehicles to less than the full amount necessary to repair the Vehicles to their pre-accident condition." *See* Dkt. No. 1-1 at

15

¶ 32. Further, Plaintiff claims that "Defendant impeded and delayed fair settlement by, among other things, dictating and allocating price allowances, setting arbitrary price caps, refusing to negotiate labor rates, refusing to pay proper amounts for paint and parts invoices, and in many cases by failing to inspect or re-inspect the Vehicles within the time frames specified by regulation." *See id.* at ¶ 16. Finally, Plaintiff alleges that, "[a]s a result of Defendant's actions and/or inaction . . . , Defendant failed to negotiate in good faith pursuant to 11 NYCRR Part 216 ('Regulation 64')." *See id.* at ¶ 17.[3]

In the present matter, the Court finds that Plaintiff has sufficiently pleaded that Defendant engaged in deceptive acts that caused injury. Although Plaintiff may not be able to support its claim against a properly brought motion for summary judgment, Plaintiff's allegations are sufficient to overcome Defendant's motion to dismiss. *See Joannou v. Blue Ridge Ins. Co.*, 289 A.D.2d 531, 532 (2d Dep't 2001) (holding that "[a]n insurance carrier's failure to pay benefits allegedly due its insured under the terms of a standard insurance policy can constitute a violation of General Business Law § 349") (citations omitted).

Moreover, the Court finds that, at this stage, that Plaintiff has adequately pleaded that its injury caused by the deceptive act is independent of the loss caused by the alleged breach of contract. *See Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009). Again, however, the

---

[3] In its memorandum of law in opposition to Defendant's motion, Plaintiff asserts additional facts it would include if the Court decides to dismiss this claim. Specifically, Plaintiff provides as follows: "To the extent that this Court feels this element has not been adequately pleaded, Plaintiff seeks leave to replead with additional facts. For example, Defendant was required by regulation to send out a Notice of Rights letter to the customers informing them that Defendant had been unable to reach an agreed price with Plaintiff and, upon request, give them the name of a shop which would perform the repairs at the price Defendant was willing to pay. 11 N.Y.C.R.R. §§ 216.12, 216.14, 216.7. Defendant did not always provide this letter. In many of the cases where Defendant did provide the letter, Plaintiff contacted the repair shop to confirm the willingness to do the work at the agreed upon price and the replacement shop was unwilling to commit to doing it at that price."

16

Court takes no position as to Plaintiff's ability to prove an injury independent of the loss caused by the alleged breach of contract as to the First Party Assignors should Defendant move for summary judgment. Further, contrary to Defendant's position, Plaintiff's GBL § 349 is not a "derivative" action, "in which the loss arises solely as a result of injuries to another party." *See* Dkt. No. 15-3 at 27. Plaintiff has specifically alleged that it sustained direct injury as a result of Defendant's deceptive and misleading practices.

Based on the foregoing, the Court finds that Plaintiff has sufficiently pleaded its GBL § 349 claim.

**F.     New York Insurance Law § 3420**

Defendant argues that N.Y. Ins. Law § 3420 precludes Plaintiff's claims relating to the Third Party Assignors. *See* Dkt. No. 15-3 at 19-20.

"Under Insurance Law § 3420(a)(2), a declaratory judgment action seeking a judgment declaring that the at-fault party's insurance company was obligated to defend and indemnify its insured can only be commenced after the third party seeking the declaration obtains a judgment against the at-fault insured, and it has gone unpaid for 30 days." *Symonds v. Progressive Ins. Co.*, 80 A.D.3d 1046, 1047 (3d Dep't 2011) (citations omitted).

Contrary to Defendant's contention, N.Y. Ins. Law § 3420 does not preclude Plaintiff's Third Party Assignor claims. Section 3420 provides that, without first meeting the conditions precedent set forth above, no action may "be maintained against the insurer ***under the terms of the policy or contract*** for the amount of such judgment not exceeding the amount of the applicable limit of coverage under such policy or contract." N.Y. Ins. Law § 3420(a)(2) (emphasis added). Plaintiff's Third Party Assignor claims are not brought "under the terms of [a]

17

policy or contract," but are claims asserting deceptive practices or acts in settling claims for which Defendant has already admitted the liability of its insured.

Based on the foregoing, the Court finds that Plaintiff's Third Party Assignor claims alleging violations of GBL § 349 are not precluded by N.Y. Ins. Law § 3420; and, therefore, denies this portion of Defendant's motion to dismiss.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion to dismiss is **GRANTED in part and DENIED in part**; and the Court further

**ORDERS** that Plaintiff's *quantum meruit* cause of action is **DISMISSED**; and the Court further

**ORDERS** that Defendant's motion is **DENIED** in all other respects; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: February 27, 2013
       Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge